### LEE WILLIAMS V. THE STATE.

#### No. 4140. Decided December 12, 1908.

**1.—Rape—Evidence—Hearsay.**

Where upon trial of rape, the State's theory was that the husband of the prosecutrix had formed a conspiracy to destroy the chastity of his wife, it was reversible error to admit in the evidence declarations of the husband with reference to said conspiracy made after the crime was committed in the absence of the defendant.

**2.—Same—Evidence—Subsequent Acts and Declarations—Conspiracy.**

Upon trial for rape where the State's theory was that the husband of prosecutrix had formed a conspiracy to destroy his wife's reputation for chastity, it was error to admit in evidence the acts and statements of various other parties with reference to said conspiracy made and occurring after the commission of the alleged crime.

Appeal from the District Court of Shelby. Tried below before the Hon. James I. Perkins.

Appeal from a conviction of rape; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*George F. Fuller,* for appellant.

*F. J. McCord,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of rape, and his punishment assessed at five years confinement in the penitentiary.

The evidence in this case, in substance, shows the following facts: Tom Smith and his wife, Etta Smith, who was a few months past 15 years of age, were living in a cottage of two rooms. The larger room contains two beds, and the smaller one was used for a kitchen. On the evening before the alleged rape Tom Smith, the

husband of the prosecutrix, and defendant were cutting cross-ties somewhere near their home, and defendant claimed that he was sick and went to the home, and was found sitting on the gallery of the little home by prosecutrix when she returned from a visit to a relation. After she prepared supper for her husband and defendant, her husband, without any previous notice, announced that he was going off that night to church. Prosecutrix protested against being left alone with the defendant, according to her testimony as well as the husband's. Prosecutrix then says that after her husband left no one remained at the house except herself and Lee Williams. And then her testimony is in the words, as follows: "After my husband went off, Lee Williams, defendant, came to my bed about two hours after I went to bed. When he came to the bed he never said nothing until I asked him who it was. I was asleep when he came to the bed, and he woke me up getting in the bed. He was in the bed when I woke up. I had a quilt over my body and Lee Williams was under the quilt when I woke up, and I asked him who it was and he said it was Lee Williams, and I asked him what he was doing in my bed and to get out, and he said he didn't want to; he said he had come there to sleep with me, and he said he had seen Tom and Tom had said he didn't care, and I kept trying to push him out and get him out, and he would not get up and put his arms around me and held me and had intercourse with me; his private parts penetrated my private parts. I did not agree to it. I made resistance and struggled to try to keep him from it. I tried to get out from under him and tried to keep from doing anything, and the reason I couldn't do anything was because he held me. Lee Williams didn't stay at my bed but a few minutes after that, and then he went out on the gallery. My husband came home just a short time after Lee Williams went out on the gallery. Lee Williams came back in the house, first, before my husband did, and when he came back in he went to his bed. His bed was in the same room where I was sleeping. We just had one bed room. We just had one room and the dining room to the house. We didn't have any beds except in this one room where these beds were. My husband came in just a few minutes after Lee Williams went to bed. He came in and went to bed with Lee Williams. I did not have an opportunity of talking with my husband that night, and didn't the next morning. He got up and got his pony and I asked him what was his hurry, that I wanted to see him before he left, and he said he would be back; said he wanted me to go to my father's to get a bed and he would come back by for it. He did not give me an opportunity to talk to him before he left. Lee Williams got up that morning and put on his clothes and left; he did not stay for breakfast. When Lee Williams was having intercourse with me I did not scream or holloa. I didn't scream or holloa because I didn't think anyone would hear

me. The next morning when I told my husband I wanted to speak to him he said he didn't have time, he said he was going to his father's to get another horse and get his wagon, and for me to go to my mother's and get a bed and he would come by there for it. I went to my mother's after the bed, but my husband never came after me and the bed. I went back home that day between 3 and 4 o'clock in the afternoon. I didn't see my husband when I got home, but I found a note from him stuck up on the door. I tore the note up and threw it away. I am acquainted with his handwriting, and it was his. He wrote the note. He wrote that he couldn't live with a woman that would sleep with two men, and he was going to move off and leave me. He said he was standing at the window where he could have laid his hand on me that night, the night Lee Williams was at my bed. I went on in the house and everything that was in the house but my clothes was missing." A short while after this occurrence, at the instance of her husband, she (prosecutrix) returned to him and lived with him a little while. The appellant swears that prosecutrix consented to copulation, and that he had carnal knowledge of her twice on the night in question. The husband of prosecutrix testifies that, as he was leaving home on the night in question, his wife told him if he went off and left her with defendant there, that she would sleep with the defendant. This aroused his suspicions, and instead of going to church, as he had stated, he went off a short distance and hitched his horse and came up to a window near his wife's bed, and there he saw his wife and the defendant kissing and saw them going through the motion of copulation; thereupon, he came into the house and went to bed with the defendant, his wife sleeping in the other bed. He admits putting the note on the door for his wife, and said in sending his wife after the featherbed was a subterfuge in order to get her away from the home so that he could take his effects away to his father's which he subsequently did. The evidence for the State further shows that after the prosecutrix and her husband went to live together, that on one occasion the husband left home with the statement that he was going to church or a dance, and that at this time they were living with the husband's father, and when bed time came, that prosecutrix was sleeping in an adjoining room to her father and mother-in-law, and Tom Williams, who was a cousin of appellant, and Lonnie Smith, brother of the husband, were sleeping on a pallet in the same room with prosecutrix. The father-in-law testified he heard a noise in the room and struck a match and discovered Tom Williams with one foot on the bed and one on the floor; that he became indignant, stating, in substance, that if he had his pistol he would shoot prosecutrix; then called for his whip in order that he might whip her. Prosecutrix and the two boys left home; prosecutrix left home in her night clothes, going to her father's; she swears that

her husband's brother was the party at the bed, and she tried to make him go away. Appellant is a first cousin of Tom Smith, the husband of prosecutrix. Various other circumstances were introduced by the State on the theory that the husband had formed a conspiracy to destroy the reputation and chastity of his own wife, and we say it with pain, that the record in this case supports the State's insistence. This, perhaps, is a sufficient statement of the evidence to review the questions raised by appellant in his motion for a new trial.

Bill of exceptions No. 1 shows State's counsel asked prosecutrix the following question: "What kind of proposition, if any, has your husband, or did he make to you after you went back and agreed to live with him, about men coming to you for hire? And what proposition, if any, did your husband, after you went back to him and was living with him, make to you in regard to persons coming to your bed for pay?" Appellant objected to said questions because same were leading, and because it was a subsequent transaction between the husband and wife, and is foreign to the main facts sought to be established, and because the said transaction does not tend to establish the guilt of the defendant. Objection being overruled, the witness answered: "My husband told me to charge. He tried to get me to leave here and go to another county and go in the business and follow such. I did not agree to it." Appellant further insists that the answer of the witness was irrelevant and immaterial, and could serve no legitimate purpose, and was prejudicial to the case of defendant. We think these objections are well taken. Declarations of the husband made after the crime was committed is not legitimate testimony. If the husband made any statement to the wife, the bill shows it was long after the consummation of the alleged crime, and in the absence of the defendant, and could not in any way bind the defendant or show his criminality.

Bill of exceptions No. 4 complains of similar testimony. The testimony of various other parties was introduced showing acts and declarations and statements made after the commission or supposed commission of this crime. This evidence ought not to have been admitted. The same may be said of bill of exceptions No. 5 wherein they proposed to prove what Jim Williams did subsequent to the alleged offense. In fact, all the testimony introduced by the State, over appellant's objection, of subsequent acts and declarations of the parties, after the consummation or supposed consummation of this alleged rape, is admissible.

For the errors pointed out, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*